UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| PROJECT DOD, INC.,              )<br>                                         )<br>           *Plaintiff*              )<br>                                         )<br>v.                                       )<br>                                         )<br>RONALD S. FEDERICI,       )<br>                                         )<br>           *Defendant*            ) | Civil No. 09-213-P-H |

*RECOMMENDED DECISION ON DEFENDANT'S MOTION TO DISMISS*

In this "reverse DMCA" case, the plaintiff web-hosting company seeks relief under section 512(f) of the Digital Millenium Copyright Act ("DMCA"), 17 U.S.C. § 512(f), against the defendant copyright holder for alleged threats of copyright infringement. First Amended Complaint ("Complaint") (Docket No. 6) ¶¶ 1-2. The defendant, Ronald S. Federici, moves to dismiss the Complaint pursuant to Fed. R. Civ. P. 12(b)(2) and 12(b)(6). I recommend that the court grant the motion.[1]

**I. Applicable Legal Standards**

A motion brought under Rule 12(b)(2) alleges lack of personal jurisdiction. Such a motion raises the question whether a defendant has "purposefully established minimum contacts in the forum State." *Hancock v. Delta Air Lines, Inc.*, 793 F. Supp. 366, 367 (D. Me. 1992) (citation and internal quotation marks omitted).

---

[1] The plaintiff asserts that it "withdraws its state law claims, Counts IV . . . and . . . V[.]" Plaintiff Project DOD's Opposition to Def[e]ndant's Motion to Dismiss ("Opposition") (Docket No. 15) at 23 n.14. Those counts should, therefore, be dismissed regardless of the disposition of this motion with respect to Counts 1-III of the Complaint.

1

The plaintiff bears the burden of establishing jurisdiction; however, where (as here) the court rules on a Rule 12(b)(2) motion without holding an evidentiary hearing, a *prima facie* showing suffices. *Archibald v. Archibald*, 826 F. Supp. 26, 28 (D. Me. 1993). Such a showing requires more than mere reference to unsupported allegations in the plaintiff's pleadings. *Boit v. Gar-Tec Prods., Inc.* 967 F.2d 671, 675 (1st Cir. 1992). However, for purposes of considering a Rule 12(b)(2) motion, the court will accept properly supported proffers of evidence as true. *Id.*

The limits of a court's authority to exercise personal jurisdiction over a non-resident defendant in a case based, as is this one, on a federal question, are fixed by the Fifth Amendment's due process clause. *Auburn Mfg., Inc. v. Steiner Indus.*, 493 F.Supp.2d 123, 127 (D. Me. 2007). Due process requires that each defendant have "minimum contacts with [the forum] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (citation and internal quotation marks omitted). Minimum contacts are determined by whether the defendant "purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985).

To establish personal jurisdiction over a non-resident defendant, the plaintiff must demonstrate that the defendant is subject either to "general" jurisdiction or "specific" jurisdiction. "[A] defendant who has maintained a continuous and systematic linkage with the forum state brings himself within the general jurisdiction of that state's courts in respect to all matters, even those that are unrelated to the defendant's contacts with the forum." *Phillips Exeter Acad. v. Howard Phillips Fund, Inc.*, 196 F.3d 284, 288 (1st Cir. 1999) (citations omitted). Absent general jurisdiction, this court may still assume jurisdiction if the claim

"relates sufficiently to, or arises from, a significant subset of contacts between the defendant and the forum." *Id*.

> The Due Process Clause requires that in order to subject a defendant to a judgment in personam, if he be not present within the territory of the forum, he have certain minimum contacts with it such that maintenance of the suit does not offend traditional notions of fair play and substantial justice. For specific jurisdiction, the constitutional analysis is divided into three categories: relatedness, purposeful availment, and reasonableness.

*Phillips v. Prairie Eye Center*, 530 F.3d 22, 27 (1st Cir. 2008) (citations and internal punctuation omitted). Once the plaintiff demonstrates that the requisite minimum contacts exist such that the defendant should reasonably expect litigation in this state, the burden shifts to the defendant to prove that the exercise of jurisdiction would not comport with fair play and substantial justice.

With respect to Rule 12(b)(6), as the Supreme Court has clarified:

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level.

*Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1964-65 (2007) (citations omitted).[2]

"In ruling on a motion to dismiss [under Rule 12(b)(6)], a court must accept as true all the factual allegations in the complaint and construe all reasonable inferences in favor of the plaintiffs." *Alternative Energy, Inc. v. St. Paul Fire & Marine Ins. Co.*, 267 F.3d 30, 33 (1st Cir. 2001). Ordinarily, in weighing a Rule 12(b)(6) motion, "a court may not consider any documents that are outside of the complaint, or not expressly incorporated therein, unless the

---

[2] In so explaining, the Court explicitly backed away from the Rule 12(b)(6) standard articulated in *Conley v. Gibson*, 355 U.S. 41 (1957), that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Twombly*, 127 S. Ct. at 1968 (quoting *Conley*, 355 U.S. at 45-46). The Court observed: "[A]fter puzzling the profession for 50 years, this famous observation has earned its retirement. The phrase is best forgotten as an incomplete, negative gloss on an accepted pleading standard: once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Id*. at 1969.

motion is converted into one for summary judgment." *Id*. "There is, however, a narrow exception for documents the authenticity of which are not disputed by the parties; for official public records; for documents central to plaintiffs' claim; or for documents sufficiently referred to in the complaint." *Id.* (citation and internal quotation marks omitted).

## II.  Factual Background

The Complaint makes the following relevant factual allegations.

The plaintiff, Project DOD, Inc., is a non-profit corporation formed under Maine law to provide hosting as an internet service provider ("ISP") to members of the public seeking to disseminate information who have difficulty gaining access to the internet through traditional hosting services.  Complaint ¶ 3.  The defendant is a resident of Virginia who provides evaluation and treatment services of the kind criticized by Advocates for Children in Therapy ("ACT"), an educational and public advocacy organization dedicated to analysis and critique of pediatric psychological treatment, including attachment therapy. *Id*. ¶¶ 2 & 4.

On or about August 30, 2008, the defendant purported to give notice to the plaintiff pursuant to section 512(c)(3) the DMCA, claiming that material critical of the defendant on ACT's website, which was hosted by the plaintiff, infringed on his copyrights. *Id*. ¶ 7.[3]  He demanded that the plaintiff "take down" the offending material. *Id*.  On September 1, 2008, the plaintiff disabled the ACT websites about which the defendant had complained. *Id*. ¶ 8.  On or about September 2, 2008, the plaintiff informed the defendant that his takedown notice did not comply with the notification requirements of the DCMA and that the ACT websites would be reinstated pending his compliance. *Id*. ¶ 9.

The defendant responded on September 2, 2008, with a more complete takedown notice for the websites www.advocatesforchildrenintherapy.org and www.childrenintherapy.org.  *Id*.

---

[3] Neither party has provided the court with a copy of this document.

¶ 10. Also on that date, the plaintiff disabled portions of those websites and forwarded the takedown notice to ACT. *Id*. ¶ 11. On September 5, 2008, ACT responded with a counter-notification in accordance with the DMCA and a demand that the plaintiff replace the removed material and cease disabling access to it. *Id*. ¶ 12. Also on September 5, 2008, the plaintiff forwarded ACT's counter-notification to the defendant with notification that the material identified in his takedown notice would be replaced unless he gave notice to the plaintiff within 10 days that he had filed an action seeking a court order to restrain ACT from engaging in the allegedly infringing activity on the plaintiff's network, in accordance with the safe harbor provisions of the DMCA. *Id*. ¶ 13. After the defendant failed to bring such an action, the plaintiff restored the allegedly infringing material on the websites. *Id*. ¶ 14.

The defendant and others engaged in a course of harassing communications with the plaintiff, demanding that it cease hosting ACT's websites and threatening to hold the plaintiff liable for its hosting of ACT's websites, in an effort to intimidate the plaintiff from engaging in its mission of hosting websites for those seeking a public forum, such as ACT's website that was critical of the defendant's services. *Id*. ¶ 15. These other individuals included Gregory Keck, Arthur Becker-Weidman, Nancy Thomas, Daniel Hughes, David Zeigler, and Neil Feinberg, who also provide attachment therapy services criticized by ACT on its websites. *Id*.¶ 16. Keck, Thomas, Hughes, Zeigler, and Feinberg sent the plaintiff takedown notices similar to that sent by the defendant. *Id*. ¶ 17. The plaintiff complied with these notices until ACT filed counter-notifications, which were sent to these individuals, who did not thereafter file court actions under the DMCA. *Id*.

The plaintiff has provided repeated notices to the defendant reminding him of the safe harbor rules of the DCMA and explaining that the material about which he complained was a

non-infringing fair use under the Copyright Act, 17 U.S.C. § 101 *et seq.*, because the material from the defendant's works was used solely for purposes of commentary about the type of services offered by the defendant. *Id*. ¶ 18. The defendant has continued to threaten and harass the plaintiff. *Id*. ¶ 19. The defendant has also directed takedown notices to Silicon Valley Web Hosting ("SVWH") with regard to the plaintiff's hosting of ACT's website. *Id*. ¶ 20. He has, through his attorney, threatened SVWH with copyright infringement. *Id*. ¶ 21.

SVWH is the plaintiff's upstream ISP, providing the plaintiff with connection to the internet without any control over the content of the websites hosted by the plaintiff, including ACT's website. *Id*. ¶ 22. As a result of the defendant's threats, SVWH has questioned whether it will continue to provide services to the plaintiff if the plaintiff fails to resolve the defendant's complaints. *Id*. ¶ 23. SVWH requires the plaintiff to indemnify it against any losses, including damage awards, attorney fees, and expenses, resulting from third-party claims arising out of activity that results in liability for copyright infringement. *Id*. ¶ 24.

### III. Discussion

#### A. Personal Jurisdiction

##### 1. *Causal Nexus*

The plaintiff alleges only that this court has specific personal jurisdiction over the defendant. Opposition at 10. The defendant relies on his affidavit "showing that he does not do business in Maine." Memorandum in Support of Defendant's Motion to Dismiss ("Motion") (Docket No. 11) at 27. The parties differ primarily on the second element of the familiar three-part test for exercise of specific personal jurisdiction set out in *International Shoe Co. v. Washington*, 326 U.S. 310, 316-20 (1945) (litigation must arise directly out of, or relate to, defendant's activities in forum state; defendant's contacts must constitute purposeful availment

of privilege of conducting activities in forum state; exercise of jurisdiction must be reasonable in light of Gestalt factors); *Harlow v. Children's Hosp.*, 432 F.3d 50, 57 (1st Cir. 2005) (same). There is a causal nexus between the defendant's serving of the notice on the plaintiff and the plaintiff's cause of action in this case. Nothing more is required for relatedness, the first element of the test. *See, e.g., Phillips Exeter*, 196 F.3d at 289.

### 2. *Purposeful Availment*

With respect to the purposeful availment element, the plaintiff contends that the defendant's purported notice, together with the later letter from his lawyer, is sufficient. Opposition at 12-17. I disagree. The plaintiff correctly points out, *id*. at 13, that, while a single act can in certain circumstances support the exercise of personal jurisdiction, "[i]n an infringement case, the sending of a cease-and-desist letter into a forum is generally not considered sufficient alone to establish personal jurisdiction under the 'effects test[]'" for purposeful availment in tort cases, citing *Accessories Ltd. of Maine, Inc. v. Longchamp U.S.A.*, 170 F.Supp.2d 12, 15 (D. Me. 2001).

The plaintiff also cites case law supporting the principle that specific actions, such as an offer to license the alleged infringing use, invoking a dispute resolution procedure requiring the recipient to lose the use of the mark in question pending the outcome of the procedure, or interfering with the recipient's business by enlisting a third party to take action against the recipient, in addition to the sending of a cease-and-desist letter will suffice to establish purposeful availment. Opposition at 14-15. The plaintiff tries to distinguish a case cited by the defendant, *Doe v. Geller*, 533 F.Supp.2d 996 (N.D.Cal. 2008). *Id*. at 15-16. It contends that the opinion in *Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, 514 F.3d 1063 (10th Cir. 2008),

7

"should control the outcome of this case," *id*. at 16-17, even though it does not come from the First Circuit.

The plaintiff asserts that the additional specific actions in this case are the defendant's failure to file suit against ACT within 10 days of the counter-notification, as required by the DMCA, and his use of "the DMCA as a sword to intimidate ISPs from hosting ACT's website." *Id*. at 17. Citing *Dudnikov*, it asserts that the defendant's takedown notice "went well beyond providing notice to plaintiffs of the claimed infringement and seeking settlement." *Id*. at 17.

There are at least two problems with the plaintiff's argument. First, it ignores precedent from this court, in *Longchamp*, which carries more weight for this purpose than does *Dudnikov*, the decision of another circuit. Second, it assumes that the additional specific actions, which are cited as important with respect to purposeful availment in cases involving the alleged infringer as plaintiff, are of equal applicability in an action brought by the alleged infringer's web host. That assumption is not justified.

*Longchamp* requires that the plaintiff "point to contacts which demonstrate that the defendant *expressly aimed* its tortious conduct at the forum, and thereby made the forum the focal point of the tortious activity." 170 F.Supp.2d at 15 (emphasis in original; citation omitted).[4] "The defendant must manifest behavior intentionally targeted at and focused on the forum[.]" *Id*. (citation and internal punctuation omitted). *See also Bancroft & Masters, Inc. v. Augusta Nat'l Inc.*, 223 F.3d 1082, 1087 (9th Cir. 2000) ("'[E]xpress aiming' encompasses wrongful conduct individually targeting a known forum resident."). All that the plaintiff has

---

[4] In this case, the plaintiff has withdrawn the only counts of its amended complaint that sounded in tort. The remaining claims either seek declaratory relief (Counts I and II) or allege a statutory violation (Count III). The requirements set out in *Longchamp* are applicable nonetheless because the remaining claims are more like a tort claim than a claim of breach of contract.

shown here is a notice required by the DMCA to be sent to the plaintiff,[5] which happened to be in Maine, although the plaintiff's server is apparently located in California, and although the target of the notice, from all that appears, was ACT, which is not alleged to be located in Maine. What is either a second DMCA notice, Motion at 3, or "a letter threatening to bring suit against DOD over the hosting of the websites of ACT[,]"[6] Complaint ¶ 19, similarly is directed at the "unauthorized activity" of ACT. Exhibit A to Complaint.

The plaintiff speculates that had the defendant "followed the DMCA takedown procedure by filing suit against ACT within 10 days of [ACT's] counter notification," the plaintiff "would be out of the picture." Opposition at 17. Contrary to the plaintiff's assertion, *id*., the fact that the defendant did not do so does not make the likelihood that the defendant purposely availed himself of the privilege of doing business in Maine or of the protection of its laws "even stronger." The defendant's failure to act against a non-resident non-party named as the target of his DMCA notices cannot serve as evidence – inferential evidence, at best – that he instead expressly aimed those notices at the state of Maine.

The quotation from *Online Policy Group v. Diebold, Inc.*, 337 F.Supp.2d 1195 (N.D.Cal. 2004), repeated by the plaintiff to support its assertion on this point, is taken out of context. That court did say, "The fact that Diebold never actually brought suit against any alleged infringer suggests strongly that Diebold sought to use the DMCA's safe harbor provisions – which were designed to protect ISPs, not copyright holders – as a sword to suppress publication of embarrassing content rather than as a shield to protect its intellectual property." 337 F.Supp.2d at 1204-05. But, that statement immediately follows a summary judgment finding that "[n]o reasonable copyright holder could have believed" that some of the material published on the web

---

[5] *See* 17 U.S.C. § 512(c)(3)(A).
[6] The letter, the first two pages of Exhibit A to the Complaint, in fact does not threaten to sue DOD.

9

site at issue was not protected by copyright at all. *Id*. at 1204. Here, the Complaint makes no such allegation against the defendant, nor does the plaintiff so allege in its written submissions.

Similarly, the plaintiff's assertion that, "[a]s in *Dudnikov*," the defendant's takedown notice "went well beyond providing notice to [the] plaintiffs of the claimed infringement and seeking settlement[,]" Opposition at 17, takes the words of that opinion out of context. The opinion goes on to say of the notice that it "went well beyond providing notice . . . of the claimed infringement . . . ; it purposefully caused the cancellation of [the plaintiffs' online] auction and allegedly threatened their future access to eBay and the viability of their business." 514 F.3d at 1082. The plaintiff makes no such allegations against the defendant in this case. The takedown of some of ACT's content – temporarily, as it turned out – is precisely what is contemplated by the DMCA and did not harm the plaintiff. The notice did not threaten the plaintiff's future access to the internet nor did it threaten the viability of the plaintiff's business.[7] And, in *Dudnikov*, the defendants did threaten to sue the plaintiffs, the alleged infringers, but, before the period for doing so under eBay's procedure expired, the plaintiffs brought a declaratory judgment action of their own. *Id.* at 1068-69.

The second infirmity in the plaintiff's argument is its reliance on case law involving alleged infringers and not the hosts of their websites. This is true, for example, of *Campbell Pet Co. v. Miale*, 542 F.3d 879, 887 (Fed. Cir. 2008) (where defendant patent holder's efforts at private enforcement occurred within forum state and, while she was present there, specific personal jurisdiction established); *Breckenridge Pharm., Inc. v. Metabolite Labs., Inc.*, 444 F.3d 1356, 1366 (Fed. Cir. 2006) ("[T]he crux of the due process inquiry should focus first on whether the defendant has had contact with parties in the forum state beyond the sending of

---

[7] In addition, *Dudnikov* did not involve the DMCA but rather eBay's own internal "Verified Rights Owner" program. 514 F.3d at 1068.

cease and desist letters or mere attempts to license the patent at issue there."); *Red Wing Shoe Co. v. Hockerson-Halberstadt, Inc.*, 148 F.3d 1355, 1361 (Fed. Cir. 1998) ("A patentee should not subject itself to personal jurisdiction in a forum solely by informing a party who happens to be located there of suspected infringement. . . .  Standards of fairness demand that [the defendant] be insulated from personal jurisdiction in a distant foreign forum when its only contacts with that forum were efforts to give proper notice of its patent rights.  [The defendant's] three letters alone do not create personal jurisdiction in Minnesota."); and *Bancroft & Masters*, 223 F.3d at 1087 (defendant's letter alleged to intend not only to trigger domain name registrar's dispute resolution procedures but also to interfere wrongfully with plaintiff's use of its domain name and to misappropriate that name for its own use sufficient to show purposeful availment as to state in which alleged infringer was located even though letter was sent to domain name registrar in a different state).  The defendant in this case was required to send notice through the plaintiff in order to have the allegedly infringing material removed from a website; he did not attempt private enforcement while in Maine, nor is he alleged to have taken actions other than the sending of DMCA notices, which are in essence cease-and-desist letters.  Even if the same standards could be applied to claims brought by alleged infringers and those brought by their web hosts, therefore, the case law cited by the plaintiff is distinguishable.

The plaintiff has failed to establish the existence of purposeful availment in its allegations in this case.

### 3.  *Gestalt factors*

Even if the plaintiff had established the purposeful availment element of the test for the existence of specific personal jurisdiction, its first amended complaint would founder on the third

and final element.[8] In *Doe v. Geller*, 533 F.Supp.2d 996 (N.D. Cal. 2008), upon which the defendant relies, Motion at 27-28, the court declined to determine whether the plaintiff had demonstrated that the defendant had purposefully availed himself of the privilege of conducting activities in California by merely sending a takedown notice to YouTube in California, although it expressed doubt that he had. 533 F.Supp.2d at 1005-06. Rather, it found that such an exercise of specific personal jurisdiction would be unreasonable based on its analysis of seven factors, *id.* at 1006-07, five of which correspond to the "Gestalt factors" recognized by the First Circuit. The factors recognized by the First Circuit are:

> (1) the defendant's burden of appearing, (2) the forum state's interest in adjudicating the dispute, (3) the plaintiff's interest in obtaining convenient and effective relief, (4) the judicial system's interest in obtaining the most effective resolution of the controversy, and (5) the common interests of all sovereigns in promoting substantive social policies.

*Pritzker v. Yari*, 42 F.3d 53, 63-64 (1st Cir. 1994) (citation omitted). The factors "are not ends in themselves, but they are, collectively, a means of assisting courts in achieving substantial justice. In very close cases, they may tip the constitutional balance." *Id.* at 64 (citation omitted).

In *Geller*, the seven factors are

> (1) the extent of the defendant['s] purposeful interjection into the forum state's affairs; (2) the burden on the defendant of defending in the forum; (3) the extent of conflict with the sovereignty of the defendant['s] state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the controversy; (6) the importance of the forum to the plaintiff's interest in convenient and effective relief; and (7) the existence of an alternative forum.

533 F.Supp.2d at 1006-07.

---

[8] I reject the plaintiff's assertion that the defendant's "cursory treatment of the personal jurisdiction issue, after extensive discussion and invitation to the Court to address the merits of the case, clearly signals his willingness to litigate in Maine." Opposition at 18. The defendant's discussion of this issue and First Circuit case law, while brief, Motion at 27-28, is sufficient to place the issue before the court for resolution. The burden of establishing jurisdiction rests, after all, with the plaintiff. *Massachusetts Sch. of Law v. American Bar Ass'n*, 142 F.3d 26, 34 (1st Cir. 1998).

The first *Geller* factor weighs in favor of the defendant; the defendant is alleged to have made only minimal purposeful interjection into Maine's affairs, *see id*. at 1007 (takedown notice sent to website owner in California but not aimed at any California resident "not substantial"). The first *Pritzker* and second *Geller* factor weighs only slightly in favor of the defendant, because modern means of travel make the distance between Maine and Virginia only an inconvenience, rather than a substantial burden, in the absence of some kind of special or unusual burden, which the defendant has not claimed here, *Pritzker*, 42 F.3d at 64. The third *Geller* and fifth *Pritzker* factor is neutral, as there is no allegation or showing in the record that another federal district court would be likely to decide the substantive issues in this court differently from this district court.

The fourth *Geller* and second *Pritzker* factor weighs slightly in favor of the plaintiff, because Maine is the plaintiff's place of residence, and Maine thus has some interest in providing a forum for adjudication of disputes in which the plaintiff resides. But, the plaintiff alleges no violations of Maine law, and Maine has little interest in the outcome of litigation involving federal law governing intellectual property. *See Geller*, 533 F.Supp.2d at 1008. The fifth *Geller* and fourth *Pritzker* factor is either neutral, as the most efficient resolution of the controversy between the plaintiff and the defendant, if any exists, could be accomplished either in Maine or Virginia, or it weighs in favor of the defendant, as the real controversy is between the defendant and ACT, which is not alleged to be a Maine resident. The sixth *Geller* and third *Pritzker* factor weighs in favor of the plaintiff, which has an interest in resolving this dispute in the federal judicial district in which it resides. The final *Geller* factor weighs against the plaintiff because Virginia offers an alternate forum.

In deciding based on the Gestalt factors that it lacked specific personal jurisdiction over the defendants who had sent the takedown notice involved in the case, the *Geller* court gave great weight to the likely consequences of a decision to exercise specific personal jurisdiction.

> Plaintiff's case for jurisdiction leads to unreasonable (even if unintended) consequences. If plaintiff's theory of jurisdiction were upheld, then the Northern District of California could assert jurisdiction over every single takedown notice ever sent to YouTube or any other company in Silicon Valley. Citizens around the world – from Indonesia to Italy, Suriname to Siberia – could all be haled into court in the San Francisco Bay area, California, USA, for sending off a fax claiming that a video clip is infringing. Federal courts sitting in California could assert personal jurisdiction over foreign defendants in wholly foreign disputes. . . . Such broad jurisdiction, premised solely on the happenstance that many internet companies that are not even parties to 512(f) litigation have offices in Silicon Valley, is unreasonable.

533 F.Supp.2d at 1009. I am similarly concerned that a web host, which, like the plaintiff here, receives a takedown notice that the copyright holder is required to send to it under the DMCA,[9] will, under the plaintiff's theory, be able to hale copyright holders into a distant court where the web host "resides", even if the client against whom the notice is actually directed is located in a state closer to that where the copyright holder resides. In addition, in this case the plaintiff actually obtains access to the internet, and thus places the allegedly infringing material into cyberspace, through a server in California, so the concept of residence has little practical applicability to the plaintiff for purposes of this case.

On balance, I conclude that the Gestalt factors also weigh against the exercise of specific personal jurisdiction over the defendant in this case.

---

[9] It is true that the DMCA does not bar a copyright holder from proceeding directly against the alleged infringer without involving the web host at all, but the DMCA is designed to provide the copyright holder with a quicker means of getting the allegedly infringing material off the internet and to provide the web host that complies with its terms a "safe harbor" against court action. *Diebold*, 337 F.Supp.2d at 1200. If the host complies with the terms of the DMCA, it is protected as a result of the copyright holder's decision to afford the host that opportunity.

### B.  Rule 12(b)(6)

In light of my recommendation that this case be dismissed for lack of personal jurisdiction, there is no need to rule on the question of whether Counts I-III of the first amended complaint fail to state claims upon which relief may be granted.[10]  *Longchamp*, 170 F.Supp.2d at 13 n.2.

### IV.  Conclusion

For the foregoing reasons, I recommend that the defendant's motion to dismiss be **GRANTED**.

### *NOTICE*

*A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which de novo review by the district court is sought, together with a supporting memorandum and request for oral argument before the district judge, if any is sought, within fourteen (14) days after being served with a copy thereof.  A responsive memorandum and any request for oral argument before the district judge shall be filed within fourteen (14) days after the filing of the objection.*

*Failure to file a timely objection shall constitute a waiver of the right to de novo review by the district court and to appeal the district court's order.*

Dated this 13th day of December, 2009.

/s/  John H. Rich III
John H. Rich III
United States Magistrate Judge


**Plaintiff**

**PROJECT DOD INC**                    represented by  **ROBERT E. MITTEL**
                                                        MITTEL ASEN LLC
                                                        85 EXCHANGE STREET
                                                        P. O. BOX 427

---

[10] The plaintiff has requested oral argument on this motion. Docket No. 14.  Because I granted leave for the parties to file 30-page briefs and the briefing schedule was twice enlarged, *see* Docket Nos. 8, 13, and 17, and because the parties' submissions were sufficient to allow me to decide the motion on jurisdictional grounds without the benefit of oral argument, that request is denied.

                                                PORTLAND, ME 04112
775-3101
Email: rmittel@mittelasen.com

**RUFUS E. BROWN**
BROWN & BURKE
85 EXCHANGE STREET
P.O. BOX 7530
PORTLAND, ME 04101
207-775-0265
Email: rbrown@brownburkelaw.com

V.

**Defendant**

**RONALD S FEDERICI**     represented by  **DAVID CHARLES MASSELLI**
LAW OFFICE OF DAVID CHARLES MASSELLI
4113 LEE HIGHWAY
ARLINGTON, VA 22207-3156
703-741-0402
Email: dm@mllaw.com

**STEPHEN C. WHITING**
THE WHITING LAW FIRM
75 PEARL STREET
SUITE 207
PORTLAND, ME 04101
207-780-0681